## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00389-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2. ANTHONY SANCHEZ,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Daniel E. Burrows, Special Assistant U.S. Attorney for the District of Colorado, and Defendant Anthony Sanchez, personally and by counsel, Michael A. Faye, submit the following plea agreement pursuant to D.C.COLO.LCrR 11.1.

### I.    AGREEMENT

1.    *Defendant Anthony Sanchez's Obligations*

Defendant Anthony Sanchez agrees to plead guilty to Count 10 of the Indictment, charging a violation of 20 U.S.C. § 1097(a) (2012), student loan fraud.

Defendant Anthony Sanchez also agrees to pay $61,131.95 in restitution, due in the following amounts, which represent the total outstanding loss to each of the victims:

- $53,519 to the U.S. Department of Education,
- $1171 to the Community College of Denver (CCD),
- $5691.95 to Front Range Community College (FRCC), and
- $750 to the State of Colorado.


COURT
EXHIBIT
1

Such restitution shall be solely the responsibility of Defendant Anthony Sanchez, and such responsibility shall exist independent of any restitution order which may exist (now or in the future) with regard to any of his co-defendants in this case.[1]

Finally, Defendant Anthony Sanchez agrees to waive his appellate rights, as detailed below.

2.   *The Government's Obligations*

The United States agrees, under Fed. R. Crim. P. 11(c)(1)(B), that, at sentencing, it will move to dismiss Counts 3 and 5 of the Indictment (the only other counts in which Defendant Anthony Sanchez is charged) with prejudice.

The United States also agrees, under Fed. R. Crim. P. 11(c)(1)(B), that its sentencing request will not include more than twelve months of imprisonment.

3.   *Defendant Anthony Sanchez's Waiver of Appeal*

Defendant Anthony Sanchez is aware that 18 U.S.C. § 3742 (2012) affords him the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, Defendant Anthony Sanchez knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 12, or (3) the government appeals the sentence imposed. If any of these three criteria apply, Defendant Anthony Sanchez may appeal on any ground that is properly available in an appeal that follows a

---

[1] The purpose of this provision is for Defendant Anthony Sanchez to avoid joint and several liability. The parties have, as part of this plea agreement, attempted to parcel out Defendant Anthony Sanchez's individual responsibility.

guilty plea.

Defendant Anthony Sanchez also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255 (2012)). This waiver provision does not prevent Defendant Anthony Sanchez from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) he should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute, (2) he was deprived of the effective assistance of counsel, or (3) he was prejudiced by prosecutorial misconduct.

## II.   ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

(1)   Defendant Anthony Sanchez misapplied certain funds;

(2)   such funds were provided to him under Subchapter IV of Ch. 28, Title 20, United States Code (i.e., the federal student aid program);

(3)   the amount of such funds exceeded $200; and

(4)   he acted knowingly and willfully.

See § 1097(a).

## III.   STATUTORY PENALTIES

The maximum statutory penalty for a violation of § 1097(a) is, as charged here: not more than five years' imprisonment; not more than a $20,000 fine, or both; not more than three years of supervised release; a $100 special assessment fee; and restitution in the amount of $61,131.95 (as apportioned above).

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional

supervision.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that Defendant Anthony Sanchez will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553 (2012), additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and that are relevant to the Court's guideline computations, to other § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in fall 2013.

The parties agree as follows:

Through others in his extended family who had been perpetrating similar schemes, Defendant Anthony Sanchez became aware of a way to fraudulently obtain student aid funds from the U.S. Department of Education by signing up for college in someone else's name, but directing the aid money to oneself. Community colleges were generally the best schools for this scheme because they had open enrollment (and,

thus, there was minimal admissions paperwork and no risk of not getting in) and conducted online courses (so a person could register attendance by just checking in online a few times[2]).

Defendant Anthony Sanchez first executed this scheme in the fall 2013 academic term at the CCD. (By this time, several of Defendant Anthony Sanchez's family members had been engaged in the same or similar schemes for at least two academic terms.) He also counseled and assisted his wife to do the same at FRCC for that term. The schools awarded financial aid to both students, and Defendant Anthony Sanchez and his wife received that aid and spent it on things wholly unrelated to pursuing any formal education. No good faith effort to pursue an education was made by either student during that academic term.

Defendant Anthony Sanchez switched to FRCC for the 2014 spring and summer terms. His wife signed up at both schools for spring 2014. Throughout this time, they continued to spend the money on non-educational pursuits and made no good faith effort to pursue a formal education.

Defendant Anthony Sanchez also unlawfully obtained personally identifiable information (PII) related to fellow employees at a place where he worked, culled from their employee files. That PII included names, birthdates, and Social Security numbers. Defendant Anthony Sanchez then used all this information to execute the same fraud scheme described above. Using the stolen PII, he signed up for classes at the CCD without the consent or knowledge of the persons whose identities he was using. He also applied for student aid. However, in enrolling and applying for student aid, he would not

---

[2] The online check-ins were necessary because the Department of Education disbursed student aid funds to the school rather than the student, and the school would generally not pass the funds on to the student until it confirmed he was actually attending.

list the students' true contact information. Rather, he would falsely list mailing addresses, phone numbers, and e-mail addresses that were his or to which he had access. Defendant Anthony Sanchez applied for and was awarded aid in the names of at least two different persons whose PII he had stolen.

The process for disbursing federal financial aid was as follows: the Department of Education would disburse funds directly to the college where a particular student who was awarded aid was enrolled. Once the money was received, the college would apply the funds to tuition, fees, and any other outstanding charges on the student's account. Any money remaining was then "refunded" to the student. The CCD and FRCC used a company called Bank Mobile to distribute aid "refunds." Specifically, the money was placed in an account with Bank Mobile in the student's name. Bank Mobile would then mail a debit card to the student. Through this card, the student could access the "refunded" money. Through this process, Defendant Anthony Sanchez and his wife received debit cards in their own names. Defendant Anthony Sanchez also received debit cards in the names of his straw students.

Altogether, $58,035 was disbursed to the CCD and FRCC for Defendant Anthony Sanchez and his wife. An additional $6622 was disbursed for the persons whose PII Defendant Anthony Sanchez had stolen.[3] This ultimately resulted in him receiving and spending $38,180.28 as proceeds of his fraud. Among his expenditures was the $1139.88 for a car stereo represented by Count 10.

---

[3] The difference between these amounts (which the parties agree together represent the intended loss for guideline calculation purposes) and the stipulated restitution amount is the result of the "return to Title IV" process whereby, based on a complicated formula, the school returns a portion of disbursed aid to the Department of Education for students who drop out, withdraw, or fail to attend a sufficient number of class sessions.

## VI.   ADVISORY GUIDELINE COMPUTATION AND § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the U.S. Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the U.S. Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A.    The base guideline is U.S. Sentencing Guidelines Manual § 2B1.1 (U.S. Sentencing Comm'n 2018), with a base offense level of 6.

B.    The following specific offense characteristics apply:

- intended loss (more than $40,000 but less than $95,000) adds six levels, *id.* § 2B1.1(b)(1); and

- two levels for using means of identification (the stolen PII) to unlawfully obtain other means of identification (debit cards, student online logins, etc.),

C.    There are no victim-related, role-in-offense, obstruction or multiple-count adjustments.

D.    The adjusted offense level therefore would be 14.

E.    The parties agree that a two-level decrease for acceptance of responsibility would be appropriate under *id.* § 3E1.1(a) so long as Defendant Anthony Sanchez does nothing inconsistent with accepting responsibility between pleading guilty and sentencing. The resulting offense level therefore would be 12.

F.    The parties understand that Defendant Anthony Sanchez's criminal history computation is tentative. The criminal history category will be determined by the

Court based on Defendant's prior convictions. Based on information currently available to the parties, it is estimated that Defendant's criminal history category would be Category I.

G.  The career offender, criminal livelihood, and armed career criminal adjustments would not apply.

H.  The advisory guideline range resulting from these calculations is ten to sixteen months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from ten months (bottom of Category I) to thirty-seven months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I.  Pursuant to *id.* § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $3000 to $30,000,[4] plus applicable interest and penalties.

J.  Pursuant to *id.* § 5D1.2, if the Court imposes a term of supervised release, that term is at least one year, but not more than three years.

K.  *Id.* § 5E1.1 requires a restitution order for the full amount of the victim's losses, consistent with 18 U.S.C. § 3663 (2012). The parties have stipulated those numbers are $53,519 to the U.S. Department of Education, $1171 to the CCD, $5691.95 to FRCC, and $750 to the State of Colorado.

The parties understand that although the Court will consider their estimate, the Court must make its own determination of the guideline range. In doing so, the Court is

---

[4] The fine table from the 2014 edition of the guidelines is used for offenses, like the one here, "committed prior to November 1, 2015." U.S. Sentencing Guidelines Manual § 5E1.2(h)(1) (U.S. Sentencing Comm'n 2018).

not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form) within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any § 3553 factor.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor Defendant Gonzalez has relied or is relying on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 2-18-19

Anthony Sanchez
Defendant

Date: 2-18-19

Michael A. Faye
Attorney for Defendant

Date: 2/19/19

Daniel E. Burrows
Special Assistant U.S. Attorney